FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

NOV 08 2010

Stephan Harris, Clerk
Cheyenne

Philip E. Abromats
Philip E. Abromats, P.C.
P.O. Box 827
Greybull, WY 82426
307-765-2840 (voice)
307-765-4518 (fax)
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JAMES WILCOX,<br>KELLY WILCOX,<br>WILCOX LIVESTOCK, LLC,<br>JESSE WILCOX,<br>　　　　　　　　Plaintiffs,<br>vs.<br><br>Deputy ANDREW MAGILL,<br>　　in his individual capacity,<br>Deputy MARK HARTMAN,<br>　　in his individual capacity,<br>Brand Inspector DAN HADDEN,<br>　　in his individual capacity,<br>Sheriff SCOTT STEWARD,<br>　　in his official and individual capacities,<br>PARK COUNTY SHERIFF'S OFFICE,<br>PARK COUNTY, WYOMING,<br>RHONDA ROBINSON,<br>　　a citizen and resident of South Carolina,<br>　　　　　　　　Defendants. | CIVIL NO. 10-CV-210-J<br><br>JUDGE Alan B. Johnson<br><br>(Jury Trial Demanded) |

### AMENDED COMPLAINT UNDER Fed. R. Civ. P. 15(a)(1)(A)

**COMES NOW PLAINTIFFS**, by and through their counsel, Philip E. Abromats, and aver as follows.

### JURISDICTION & VENUE

1. This is a civil rights action arising under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for monetary relief for unreasonable seizure of property, as well as related claims under federal and state law.

2. This Court has subject matter jurisdiction over plaintiffs' federal claims under 28 U.S.C. §§ 1331, 1343(a).

3. This Court has subject matter jurisdiction over plaintiffs' state claims, including pendent-party claims against Rhonda Robinson, under 28 U.S.C. § 1367(a).

4. All defendants except Rhonda Robinson are citizens and residents of the United States and the State of Wyoming, and have acted for purposes of this litigation under color of state law.

4a. On information and belief within the meaning of Fed. R. Civ. P. 11(b)(3) all municipal and official-capacity defendants have acted pursuant to policy, practice, custom or usage.

5. Rhonda Robinson is a citizen and resident of the State of South Carolina.

6.      This Court has personal jurisdiction over all the Wyoming-based defendants.

7.      This Court has personal jurisdiction over Rhonda Robinson, inasmuch as she is accused of committing a tort within the State of Wyoming.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b).

9.      On April 12, 2007, Jim Wilcox entered into an agreement with one Rhonda Robinson of South Carolina for the purchase of eleven horses. (Exh. 1.)

10.     This entailed certain debt owed by Wilcox to Robinson. Id.

11.     Due to the historically deep recession and severe illnesses of Kelly Wilcox, that debt became past due. (Exh. 2.)

12.     Robinson sued (only) Jim Wilcox in Fifth District Court, Cody (exh. 3), but somehow managed to obtain an improper default judgment against Wilcox Livestock, LLC, in addition to a legitimate one against Jim Wilcox. (Exh. 4.)

13.     Robinson sought to execute on that judgment and that is where this dispute began.

14.     On July 16, 2008 at approximately 1:00PM, Park County Sheriff's Deputy MaGill arrived at the Wilcoxes with a Writ of Execution (exh. 5) and said that he was there to take eleven head of horses. (See exh. 6.)

15. Why only eleven horses were to be seized is something of a mystery, because this was an execution on a judgment, see W.S. § 1-17-101 et seq., not a prejudgment replevin of the horses acquired with Robinson's purchase money, see W.S. § 1-15-301 et seq.

16. Every horse owned free and clear by Jim Wilcox was subject to execution, but only those horses owned by him and not other persons or entities, nor horses in which other parties had superior liens than Robinson.

17. The seizure was a surprise to the Wilcoxes. Their then-attorney Brad Bonner had been in communication with Robinson's attorney, Alex Sitz, and Ron Jurovich, counsel for the Bank of Wyoming, which claimed a lien on the horses superior to Robinson's judgment lien (Robinson had failed to perfect her purchase money lien under W.S. § 34.1-9-324).

18. The Wilcoxes had been told by Alex Sitz that he would not be moving forward with the execution, as the Wilcoxes were working on a re-finance with the Bank of Wyoming to resolve their financial issues.

19. Alex Sitz, Bryan Skoric and Deputy MaGill were put on notice by Bonner and Jurovich that any execution in favor of Robinson would be wrongful and unlawful because of the Bank of Wyoming's superior lien and because of the void judgment against Wilcox Livestock, LLC. (See exh. 7.)

20. Additionally, at the time of the execution seizure, the Wilcoxes explained to Deputy MaGill that the horses that they wanted to seize were mortgaged to the Bank of Wyoming (see generally exh. 6) and placed MaGill on the phone with Brian Yarrington,

4

President of the Bank of Wyoming, who confirmed that the horses were mortgaged to the bank. Ron Jurovich was also included in these telephone conversations.

21. While these conversations were taking place by phone, Jim Wilcox was searching through his files of brand inspections and horse papers, as there were far more than eleven horses on his property and he was attempting to determine which ones the seizure arguably applied to.

22. Kelly Wilcox walked down the alley to where Deputy Hartman, Brand Inspector Dan Hadden, Ken Frazier, and John Chaffee were catching and loading horses and asked them to please stop as Jim and Andy MaGill were on the phone with the Bank of Wyoming.

23. Jim Wilcox got off the phone and walked back down the alley to where John Chaffee had backed his trailer into the loading alley. They had Neon's Cappuccino (a prize breeding stallion and the property of Wilcox Livestock, LLC) and six broodmares in a corral, in addition to four geldings tied up. Dan Hadden said to Jim Wilcox, "I'm not here to 'f**k around.' I'm here to load eleven head of horses."

24. All of the parties there to effect the seizure had copies of pictures of horses from the Wilcoxes' website and were attempting to pick out horses solely by those pictures and animal color. In this chaotic scene, no brand inspections or paperwork were exchanged and Jim Wilcox was not even given time to find the paperwork to prove ownership of horses.

25. That is, if the idea really was to return to Robinson the eleven horses whose purchase she had financed (which was still not a lawful remedy), no serious effort was ever made

5

to positively identify those eleven horses. Eleven horses were essentially rounded up and loaded onto trailers, either at random or upon the express direction of Rhonda Robinson.

26. Robinson's business deal with Wilcox had involved only geldings, but at the direction of Robinson via pictures from Wilcox's website, she obtained a valuable stallion and six broodmares, in addition to four geldings.

27. Bank President Yarrington and Ron Jurovich both told Jim Wilcox during the phone conversations at the time of seizure that the horses would remain in Park County and would be returned to him within three days.

28. However, Attorneys Brad Bonner and Ron Jurovich were unable to get any information from Alex Sitz or the Park County Sheriff's Office on the whereabouts of the horses until quite some time later, when the Wilcoxes learned that the horses had been immediately hauled 2,000 miles to Rhonda Robinson in South Carolina by John Chaffee.

29. A number of those horses were in fact owned by Wilcox Livestock, LLC, an entity that was never properly sued, resulting in a void judgment by default against it and an unlawful execution against its property.

30. Also seized and shipped were a retired bay gelding belonging to Kelly Wilcox, and a Blue Roan mare owned by, *inter alia*, Jesse Wilcox. (See Exh. 8 for list of horses seized.)

31. Once the horses were in South Carolina, Robinson proposed that they be sold privately, based on her own appraisals as opposed to public auction, and that, moreover, she should be allowed to buy them for herself.

32. The appraisal that Robinson obtained conveniently valued the horses, which were then conservatively worth at least $75,000, at only $5500. (See exh. 9.)

33. Almost a year after the execution seizure, the Fifth District Court ruled that the Bank of Wyoming's lien priority was indeed superior to Rhonda Robinson's judgment lien, that any judgment against Wilcox Livestock, LLC was void and the LLC's horses were not subject to execution in the first place, that all horses not owned by Jim Wilcox personally should be returned to their rightful owners, that Jim Wilcox's horses should be returned to the Sheriff of Park County for proper execution process to take place, and that Rhonda Robinson was not entitled to a private sale of any of the horses. (See exh. 10.[1])

34. Wilcox Livestock LLC's prize breeding stallion, Neon's Cappuccino, however, was allegedly too sick to be returned from South Carolina, and his fate and whereabouts remain unknown to this day.

35. What should have happened was very different. First, normally all of the horses owned by Jim Wilcox (and only his horses) would have been seized under the Writ of Execution, not just eleven. W.S. § 1-17-301 ("Except for property exempt by law, all property of the judgment debtor, both real and personal . . . , is subject to execution."). This would have avoided the circus atmosphere in which horses were seized by comparison with photos, by color, etc. All

---

[1] Order unsigned by Court but approved as to form by Robinson's counsel. There is no dispute known to claimants that the Order is genuine and that the parties acted in accordance therewith.

of them would have been removed to the custody of the Sheriff and the matter could have been sorted out soon thereafter.

36.   Second, the seized horses should not have been permitted to immediately leave the local area. Under W.S. § 1-17-102, the Wilcoxes should have been given at least ten days to petition the court for a hearing to determine if any of the horses were exempt from execution and should have been returned forthwith.[2] Had this been done, the horses belonging to persons and entities other than Jim Wilcox could have been identified and quickly returned. Further, the competing lien priority claims of Rhonda Robinson and the Bank of Wyoming could have been sorted out while the horses were still close by, not 2,000 miles away in South Carolina.

37.   Third, had there been a sale, under W.S. §§ 1-17-312, 314, it should have been a public sale at auction. A private sale could only be held by the sheriff if he was able to show good cause and obtain appraisals by three disinterested persons. It was completely against the law for Robinson to conduct her own private sale because of obvious problems of lowball appraisal, fraud and self dealing.

38.   As a result of the unlawful way the execution was handled by Robinson and any or all of the state and county actors claimed against, the plaintiffs suffered substantial monetary damages. They never got Neon's Cappuccino back, a horse with a replacement value of $50,000

---

[2] In addition, there were legal requirements to verify the DNA and veterinary health of the horses to be checked before they were moved across a state line. To the best of the Wilcoxes' knowledge, none of these things happened. It is unclear what role the brand inspector played in this flouting of the law.

and whose offspring over ten years could have been sold for approximately $100,000. They also lost the use of the other horses for almost a whole year, ruining their breeding program and resulting in substantial lost sales. Further, the loss of the horses for that time resulted in the Wilcoxes' inability to complete their re-finance plans and regain a footing in their recession-damaged business. Moreover, the physical and emotional stress from the loss of the horses and the unlawful seizure, caused Mrs. Wilcox, who was already suffering from both multiple sclerosis and breast cancer, both physical and emotional injury, including but not limited to aggravation of either or both of those illnesses. And finally, the injury to their business resulted in such great and prolonged loss of income that, in October 2010, the Wilcoxes lost their ranch in foreclosure, despite diligent attempts to re-finance it.

### COUNT I – DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS
### (All Plaintiffs Against All State-Actor Defendants)

39. Plaintiffs reassert and reallege the averments of paragraphs 1-38 as if set forth fully herein.

40. Each and every plaintiff held a valid and subsisting property interest in at least one of the horses seized on or about July 16, 2008, the precise interest to be determined during the course of these proceedings.

41. Plaintiffs, jointly and severally, were deprived of any pre-deprivation notice of the seizure, that is, before it occurred.

42. Plaintiffs, jointly and severally, were deprived of any pre-deprivation opportunity to be heard regarding the seizure, that is, before it occurred.

43. Plaintiffs, jointly and severally, were arbitrarily deprived of property to which Rhonda Robinson held no property interest, or an insufficient property interest to warrant seizure.

44. Plaintiffs, jointly and severally, were deprived of any meaningful post-deprivation notice their rights after the seizure occurred.

45. Plaintiffs, jointly and severally, were deprived of any meaningful post-deprivation opportunity to be heard regarding the seizure, because the horses were unlawfully spirited away to South Carolina, outside the jurisdiction of the Wyoming Courts.

46. Plaintiffs, jointly and severally, were deprived of any pre-deprivation notice of the seizure, that is, before it occurred.

47. Plaintiffs, jointly and severally, have been deprived of the prize breeding stallion, Neon's Cappuccino, to this day, inasmuch as the horse's life, health and whereabouts remain unknown.

48. Plaintiffs, jointly and severally, were deprived of the beneficial use of the other horses for an extended period of time, until they could be returned from South Carolina.

49. As a result of the unlawful seizures of their livestock, plaintiffs have suffered money damages, in an amount to be determined at trial.

50. As a result of the unlawful seizures of the livestock, plaintiff Kelly Wilcox has suffered damages from the aggravation of serious medical conditions, in an amount to be determined at trial.

51. As a result of the unlawful seizures of their livestock, some of which were pets as well as commercial property, the individual plaintiffs have suffered damages from mental anguish, in an amount to be determined at trial.

52. No defendant is entitled to qualified immunity.

### COUNT II – SECTION 1983 CONSPIRACY
(All Plaintiffs Against All State-Actor Defendants)

53. Plaintiffs reassert and reallege the averments of paragraphs 1-52 as if set forth fully herein.

54. Defendants, or any two or more of them, agreed to deprive plaintiffs, or any of them, of their property without due process of law, as set forth in Count I.

55. Defendants, or any of them, took at least one overt action, whether lawful in itself or not, in furtherance of the conspiracy.

56. As a result, plaintiffs, jointly and severally, suffered damages as set forth in Count I herein, and are entitled to recover from defendants, jointly and severally.

57. No defendant is entitled to qualified immunity.

## COUNT III – DEPRIVATION OF PROPERTY IN VIOLATION OF STATE LAW
(All Plaintiffs Against All Defendants)

58. Plaintiffs reassert and reallege the averments of paragraphs 1-57 as if set forth fully herein.

59. The execution on plaintiffs' livestock was not carried out in accordance with the law of the State of Wyoming.

60. The post-execution disposition of plaintiffs' livestock was not carried out in accordance with the law of the State of Wyoming.

61. As a result, plaintiffs, jointly and severally, suffered damages as set forth in Count I herein, and are entitled to recover from defendants, jointly and severally.

62. Plaintiffs have complied with the Wyoming Governmental Claims Act in advance of bringing this claim. (See exh. 11.)

## COUNT IV – CONVERSION
(All Plaintiffs Against Rhonda Robinson)

63. Plaintiffs reassert and reallege the averments of paragraphs 1-62 as if set forth fully herein.

64. By having the seized horses unlawfully removed from Wyoming to her possession in South Carolina, Rhonda Robinson converted those horses to her own use.

65. Rhonda Robinson has permanently converted the horse known as Neon's Cappuccino to her own use and is liable for his full value.

66. Rhonda Robinson converted the other ten horses seized to her own use during the time they were in her possession, and is liable for the use of the horses during that period of time.

67. Rhonda Robinson converted the other ten horses seized to her own use during the time they were in her possession, and is liable for their deterioration in condition when they were finally returned to Wyoming.

68. Plaintiffs, jointly and severally, also suffered damages as set forth in Count I herein, and are entitled to recover from said damages from Robinson.

### COUNT V – CIVIL CONSPIRACY UNDER STATE LAW
### (All Plaintiffs Against All Defendants)

69. Plaintiffs reassert and reallege the averments of paragraphs 1-68 as if set forth fully herein.

70. Defendants, or any two or more of them, agreed to deprive plaintiffs, or any of them, of their property, as set forth in the preceding counts for relief.

71. Defendants, or any of them, took at least one overt action, whether lawful in itself or not, in furtherance of the conspiracy.

72. As a result, plaintiffs, jointly and severally, suffered damages as set forth in Count I herein, and are entitled to recover from defendants, jointly and severally.

## COUNT VI – MUNICIPAL LIABILITY
**(All plaintiffs Against All Municipal and Official-Capacity Defendants)**

73.     Plaintiffs reassert and reallege the averments of paragraphs 1-72 as if set forth fully herein.

74.     On information and belief within the meaning of Fed. R. Civ. P. 11(b)(3), the Defendants, or any of them, acted not only under color of law, but in accordance with municipal policy, practice, custom or usage.

75.     To the extent the Park County Sheriff, Scott Steward, acted unlawfully under color of law, he did so as the chief legal policymaker for Park County, making the Park County municipal defendants liable under section 1983 as a matter of law.

76.     On information and belief within the meaning of Fed. R. Civ. P. 11(b)(3), the Defendants, or any of them, are liable for failure to train subordinates.

77.     On information and belief within the meaning of Fed. R. Civ. P. 11(b)(3), the Defendants, or any of them, are liable for failure to supervise subordinates.

78.     On information and belief within the meaning of Fed. R. Civ. P. 11(b)(3), the Defendants, or any of them, are liable because they ratified the actions of subordinates.

79.     On information and belief within the meaning of Fed. R. Civ. P. 11(b)(3), the Defendants, or any of them, are liable for failure to investigate the acts of subordinates.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court enter judgment in their favor and against all defendants, as follows:

(1) compensatory and/or punitive damages against the state-actor defendants, as proven at trial and permitted by law;

(2) compensatory and/or punitive damages against Rhonda Robinson, as proven at trial and permitted by law;

(3) reasonable costs and attorney's fees under 42 U.S.C. § 1988 against the state-actor defendants;

(4) non-statutory costs of this action; and

(5) such other relief as the court deems just and proper.

**DATED** this 5th day of November 2010.

Respectfully submitted,

**PHILIP E. ABROMATS, P.C.**

By: _____
Philip E. Abromats
State Bar No. 6-4035
P.O. Box 827
Greybull, WY 82426
307-765-2840
Attorney for Plaintiffs

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury of all issues so triable.

**DATED** this 5th day of November 2010.

                Respectfully submitted,

                **PHILIP E. ABROMATS, P.C.**

                By: _[signature]_
                     Philip E. Abromats

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of:

## AMENDED COMPLAINT UNDER Fed. R. Civ. P. 15(a)(1)(A)

was served by CM/ECF, U.S. Mail or E-mail by consent, as the case may be, on:

Thomas Rumpke, Esq.
Senior Assistant Attorney General
123 Capitol Building
Cheyenne, WY 82002
(Counsel for the Individual-Capacity 1983 Defendants),

Larry B. Jones, Esq.
William L. Simpson, Esq.
Simpson Kepler & Edwards, LLC
P.O. Box 490
Cody, WY 82414
(Counsel for the Municipal and Official-Capacity 1983 Defendants),

Rhonda Robinson, pro se
1992 St. Matthews Road
Orangeburg, SC 29118,

this 8th day of November 2010.

By: /s/ Philip E. Abromats