Bruce A. Salzburg
Attorney General

John W. Renneisen
Deputy Attorney General

Thomas W. Rumpke #6-2974
2424 Pioneer Ave., 2nd Floor
Cheyenne, WY 82002
(307) 777-5996
(307) 777-8920 Facsimile

Attorneys for Defendant Dan Hadden in his individual and official capacity, and for Defendants Andrew
Magill, Dan Hartman, and Sheriff Scott Steward in their individual capacities.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| JAMES WILCOX, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-CV-210-J |
| | ) | |
| ANDREW MAGILL, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**COMES NOW**, Defendants Andrew Magill, Dan Hartman, and Sheriff Scott
Steward, and Defendant Dan Hadden in their individual capacities, and in support of their
motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) submit the following
memorandum of law.

*Wilcox, et al v. Magill, et al.*, Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 1

## I.   FACTS

Plaintiffs Jim and Kelly Wilcox ("Wilcox's"), Wilcox Livestock, LLC ("Wilcox Livestock"), and Jessie and Emilie Wilcox ("the Children") claim that they were deprived of their property without due process of law when Deputies Magill and Hartman, along with Brand Inspector Dan Hadden, levied a Writ of Execution on July 16, 2008.  (Doc. # 1, *passim*).  Plaintiffs do not make a claim under the Fourth Amendment.  It is clear from the public records attached to Plaintiffs' Amended Complaint, as well as other court filings in the underlying case, Plaintiffs' Amended Complaint must be dismissed under *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937 (2009).

### (A)   Default Judgment and Writ of Execution

On January 31, 2008, Rhonda Robinson filed suit against Jim Wilcox and Wilcox Livestock for fraud and breach of a purchase agreement.  (Doc. # 13 at ¶¶ 7, 9; Doc. 13-1 at 1, 3-7).  Neither Jim Wilcox nor Wilcox Livestock appeared in the state district court and a default judgment was entered against Jim Wilcox and Wilcox Livestock on April 11, 2008.  (Doc. # 13-1 at 8-10).  On June 30, 2008, the Clerk of Court entered a writ of execution on the judgment obtained by Robinson.  (*See* Doc. 13-1 at 11-12; Ex. A, Writ of Execution).[1]

---

[1] Plaintiff attached part of the Writ of Execution to their Amended Complaint.  (*See* Doc. # 13-1 at 11-12).  Plaintiffs did not attach the third page of the Writ of Execution entered by the Clerk which notified Plaintiffs of their rights under Wyoming law including the right to object under WYO. STAT. ANN. § 1-17-102(b).  (*See* Ex. A at 3).

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 2

On July 16, 2008, Deputies Magill and Hartman accompanied Brand Inspector Dan Hadden to the Wilcox property. (Doc. # 13 at ¶ 14). Although the Writ of Execution allowed for the collection of all goods and chattels (including livestock) owned by Jim Wilcox or Wilcox Livestock up to the amount of $38,269.91, Defendants seized only 11 horses from the Wilcox property. (*See* Doc. # 13 at ¶¶ 14-16; Ex. A at 2). The horses were transported to the judgment-creditor (Robinson) in South Carolina, pending a sheriff's sale. (Doc. # 13 at ¶ 28). As Robinson explained, the horses were shipped to her property to avoid unnecessary boarding costs since the Park County Sheriff's office did not have facilities to board the horses while various legal issues were resolved. (Doc. # 13-2 at 21).

**(B)    Subsequent State Court Proceedings**

Following the levy on the Writ of Execution on July 16, 2008, the Bank of Wyoming (Bank) filed a motion to stay the execution, claiming that it had a superior lien interest to Robinson. (Doc. # 13 at ¶ 19; Ex. D). The Park County Sheriff's Office was notified of this dispute in lien priority. (Ex. D at ¶ 7). On July 25, 2008, just nine days after the Writ of Execution was levied, Plaintiffs Jim and Kelly Wilcox objected and sought relief from judgment pursuant to Wyo. R. Civ. P. 60. (*See* Ex. E). As of July 25, 2008, the default judgment against Jim Wilcox and Wilcox Livestock was still in effect.

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 3

In seeking relief from judgment, Plaintiffs argued that the problem with the default judgment was that the judgment entered against "Wilcox Livestock, LLC" was invalid because that entity had not been served. (*See* Ex. E at ¶¶ 5-7; Doc. # 13 at ¶ 19). Hence, Plaintiffs concluded that the Defendant improperly levied the execution against property owned by Wilcox Livestock when the default judgment against Wilcox Livestock was not proper. Specifically, Plaintiffs argued that:

> Because the Judgment against Wilcox Livestock, LLC is void, the execution of that judgment against Wilcox Livestock, LLC was improper. Of the 11 horses seized during the execution, four were owned by Wilcox Livestock, LLC. (See Affidavit of Jim Wilcox and documents attached thereto). One other horse was owned by Jessie and Emilie Wilcox, children of Jim and Kelly Wilcox. As such, execution against that property was improper, too. The Court should nullify the execution and order Plaintiff, Plaintiff's counsel, and the Park County Sheriff to return the property in question to the custody of its rightful owner.

Ex. E at ¶ 9.

The Wilcox's specifically sought an order "directing Plaintiff, Plaintiff's counsel and the Park County Sheriff to immediately return to Wilcox Livestock, LLC all of the company's property seized during the July 16, 2008 execution" as well as an order directing the return of the Children's property. (Ex. E at 3 (Prayer for Relief at ¶¶ c and d)). In support of the requested relief, Jim Wilcox, as the manager of Wilcox Livestock, submitted an affidavit describing the horses that were allegedly improperly seized

*Wilcox, et al v. Magill, et al.*, Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 4

because they did not belong to him.  (Ex. E at 10-11).[2]

The horses included: a dun mare (Majestic Sky); a black-and-white, paint gelding (Sundance); a brown gelding with a star (Showgun), and; a bay gelding (with a star) (Jazz).  (Ex. E at 12, 14-16).  Jim Wilcox swore under oath that one of the horses seized was owned by the Children.  That was a bay, paint mare named "Skeeter."  (Ex. E at 13).[3] Conspicuously missing from Plaintiffs' objection is any claim that a "prize breeding stallion, Neon's Cappuccino . . ." was the property of Wilcox Livestock and was wrongfully levied against.  (*Compare* Doc. # 13 at ¶ 34 and Doc. # 13 at 30 *with* Ex. E at 12-16 (describing horses seized that did not belong to Jim Wilcox)).

The state district court conducted a hearing at which Plaintiffs Jim and Kelly Wilcox, as well as Wilcox Livestock, appeared with their attorney.  (Ex. F at 1).  On July 29, 2008 (13-days after the levy), the state district court allowed the Bank to intervene and stayed the execution (sheriff's sale).  (Ex. F).  The state district court did not order the horses returned to Wilcox Livestock or Jessie and Emilie Wilcox.  Instead, the Court ordered the parties to address certain issues including ownership of the horses and the role of the Sheriff with respect to custody of property seized during levy of the execution. (Ex. F at 1-2).  The state district court set the matter for hearing on August 14, 2008.

---

[2]  Plaintiffs attached Jim Wilcox's affidavit to their Amended Complaint.  (*See* Doc. 13-2 at 1-2).  However, Plaintiffs did not include the documents attached to the affidavit and referenced therein.

[3]  In their Amended Complaint, Jessie and Emilie Wilcox aver that their horse was a blue roan mare.  (Doc. # 13-2 at 16).  However, the only horse identified to the state district court as belonging to Jessie or Emilie Wilcox was a bay paint mare.  (*See* Ex. E at 13).

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 5

(*See* Ex. F at 3; Ex. G).

At that hearing, the state district court was to hear whether Wilcox Livestock should be granted relief from the default judgment that had been entered against it. (Ex. G at ¶ 4). In addition, the state district court was to hear "Whether the Park County Sheriff and/or the Plaintiff should be required to immediately return property (horses) attached on July 16, 2008, to Park County and to the custody of the Sheriff." (Ex. G at ¶ 1). However, before the state district court could conduct a hearing on August 14, 2008, Jim and Kelly Wilcox, as well as Wilcox Livestock, filed for bankruptcy thereby staying all matters pending before the state district court. (Ex. H).

**(C)**      **The Bankruptcy Proceedings**

Plaintiffs Jim and Kelly Wilcox filed for bankruptcy on August 13, 2008. (*See* Ex. I (Doc. # 1 (excerpts) from *In re James Wilcox,* U.S. Bankr. Ct. for the District of Wyoming, Case No. 08-20478)). Wilcox Livestock, LLC, filed for bankruptcy the same day. (*See* Ex. J, Doc. # 1 (excerpts) from *In re Wilcox Livestock, LLC,* U.S. Bank. Ct. for the District of Wyoming, Case No. 08-20479) at 1, 3). The confusion as to which horses are owned by Jim Wilcox and which ones are owned by Wilcox Livestock, LLC, is borne out in the bankruptcy documents.

The petition for the individual debtors (Jim and Kelly Wilcox) is nearly identical to the petition for the LLC. Of particular importance are the property schedules for the entity (Wilcox Livestock, LLC) and the individuals (Jim and Kelly Wilcox). The schedules list the exact same horses as being owned by both the entity and the

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 6

individuals. (*Compare* Ex. J (Wilcox Livestock, LLC, property schedules) Doc. # 1 at 7-8 *with* Ex. I (Jim and Kelly Wilcox property schedules) Doc. # 1 at 11-12). Thus, the Wilcox's and Wilcox Livestock represented to the Bankruptcy Court that each owned the horses. More importantly, neither of the schedules mention a "prize breeding stallion." (*Compare* Exs. I and J *with* Doc. 13 at ¶ 38). Plaintiffs' Complaint alleges that "Neon's Cappuccino" is a stallion that cost $20,000 in 1995, but is now worth $50,000. (Doc. # 13 at ¶ 38 with Doc. # 13-2 at 16). There is no horse valued at $50,000 on the bankruptcy property schedules and the three horses listed at $20,000 are two geldings and a third horse named "Dakota," not "Neon's Cappuccino." (*See* Exs. I and J).

On the same day they filed their petitions in the Bankruptcy Court (August 13, 2008), the Wilcox's and Wilcox Livestock moved for permission to buy and sell horses. (Ex. K). The Bankruptcy Court denied permission to buy and sell horses. (Ex. L).

Robinson filed a motion for relief from stay to allow matter concerning the horses at issue in the Amended Complaint to go back to the state district court and proceed with a sheriff's sale. (Ex. M). The Plaintiffs objected to relief from the stay. (Ex. N). In that objection, the Plaintiffs finally mentioned that a stallion had been seized. (Ex. N at ¶ 3). Robinson's request for relief from the stay was denied. (Ex. O).

Finally, on December 1, 2008, Plaintiffs filed motions to find Robinson in contempt and asking the Bankruptcy Court (the court with jurisdiction) to order Robinson to return the horses to the Plaintiffs (since they would now be part of the bankruptcy

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 7

estate). (Ex. P). However, Plaintiffs withdrew that motion before the Bankruptcy Court ruled upon it. (Ex. Q). Thereafter, Robinson moved to dismiss the bankruptcies. Although Plaintiffs initially objected, they later withdrew their objections. (Ex. R). The Bankruptcy Court dismissed both cases on February 23, 2009. (Ex. S).

### (D)      Back to State Court

With the bankruptcies having been dismissed, the state court reacquired jurisdiction over the disputed horses. The state district court conducted a hearing at which Jim Wilcox appeared. (Ex. T at 1).[4] On June 8, 2009, the state district court entered an order addressing various motions including, but not limited to, Robinson's motion to conduct a private sale. (Ex. T).[5]

In its order, the state district court denied Robinson's motion for private sale (Ex. T at ¶ 10) and ordered the horses owned by Jim Wilcox be returned to the Park County Sheriff for sale in accordance with the prior execution. (Ex. T at ¶ 8). The state district court also ordered that all horses not owned by Jim Wilcox be returned to their owners by June 21, 2009. (*See* Ex. T at ¶¶ 7, 9; Doc. # 13 at ¶ 33). However, since Jim Wilcox and Wilcox Livestock had not claimed that any stallion (i.e. "Neon's Cappuccino") had been wrongfully levied against, the order did not mention "Neon's Cappuccino" by name.

---

[4]  Wilcox's counsel moved to withdraw from the case on March 11, 2009 for non-payment of fees. The Motion was granted on April 3, 2009.

[5]  Plaintiffs attached an unsigned copy of the state district court's June 8, 2008, order to their Amended Complaint. (*See* Doc. # 13-3 at 1-3). Ex. T is merely a signed copy of the same order.

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 8

On the same day, the state district court entered a default judgment against Jim Wilcox *nunc pro tunc.* (Ex. U). Consequently, the horses owned by Jim Wilcox remained subject to the previously issued Writ of Execution. (Ex. T at 2).

Following the state district court's order, the horses owned by Jim Wilcox were, in fact, sold at a sheriff's sale on June 26, 2009, in accordance with the state district court's June 8, 2009, order. (Ex. B). The horses owned by Jim Wilcox which were levied by Writ of Execution were sold at public auction for a total of $754.80, after costs of sale. (Ex. C at 1).

There is no allegation in the Amended Complaint that the horses which Jim Wilcox claimed were not owned by him (*see* Ex. E) were not returned to their owners in accordance with the state district court's order. (*See* Ex. T at ¶ 9). Instead, Plaintiffs allege that they lost the use of the horses for a year while the legal matters were pending. (Doc. # 13 at ¶ 39). Therefore, the reasonable inference is that all the horses identified in the state court proceedings by Jim Wilcox (*see* Ex. E at 12-16) were returned to their owners. Although Plaintiffs specifically allege that they never received "Neon's Cappuccino," Jim Wilcox (who stated in his affidavit that he was a member of Wilcox Livestock, LLC, and that he "was present while [the defendants] seized the horses" and that he knew "the horses and identified and made a record of all 11 horses taken") never identified that horse as a wrongfully seized horse. (*Compare* Doc. # 13 at ¶ 39 *with* Ex. E at 10 (¶¶ 3-4)).

*Wilcox, et al v. Magill, et al.*, Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 9

## II.    STANDARD OF REVIEW

Under FED. R. CIV. P. 12(c), the court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff.  *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 556 (10th Cir. 1999).  Formerly, granting a motion to dismiss was only appropriate only if the plaintiff can prove no set of facts that would entitle him to relief.  *See Conley v. Gibson,* 355 U.S. 41 (1957).  The *Conley* standard "has earned its retirement," and the Supreme Court "has prescribed a new inquiry . . . to use in reviewing a dismissal: whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Ashcroft v. Iqbal,* __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

A claim is facially plausible when the plaintiff pleads facts that allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556.  Although a court must accept the complaint's factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

Documents attached to the pleadings are exhibits and may be considered. *See Park Univ. Enterprises, Inc.,* 442 F.3d at 1244; *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991); FED. R. CIV. P. 10(c).  Additionally, the Court may consider unattached documents which are referred to in the complaint and central to the plaintiff's claim without converting this motion to a motion for summary judgment, so long as the

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 10

authenticity of such documents is undisputed. *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997). After all, "if the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *GFF Corp.*, 130 F.3d at 1385. Finally, the court may consider facts which may be judicially noticed. *See Geltman v. Verity,* 716 F.Supp. 491 (D. Colo. 1989) *citing* 2A MOORE'S FEDERAL PRACTICE ¶ 12.15. Courts may take notice of proceedings in other courts if those proceedings have a direct relation to matters at issue. *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979).

## III.   ARGUMENT

### (A)   DEFENDANTS ARE ENTITLED TO QUASI-JUDICIAL AND/OR QUALIFIED IMMUNITY FOR THE SEIZURE OF THE HORSES ON JULY 16, 2008, AS TO JIM WILCOX AND WILCOX LIVESTOCK.

Although Plaintiffs do allege that some horses were "unlawfully seized" from the Wilcox property (Doc. # 13 at ¶ 46), Plaintiffs do not make a Fourth Amendment claim. (*See* Doc. # 13, *passim*). Plaintiffs also admit that all of the horses owned by Jim Wilcox were subject to execution on July 16, 2008. (Doc. # 13 at ¶ 35). Thus, these Defendants are entitled to quasi-judicial and/or qualified immunity for the actual seizure of horses pursuant to the Writ of Execution.

*Wilcox, et al v. Magill, et al.*, Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 11

A judgment constitutes a lien on the property of the defendant within the county in which the judgment is obtained. WYO. STAT. ANN. § 1-17-302. Wyoming law allows the Clerk of Court to enter a writ of execution once judgment is obtained. WYO. STAT. ANN. § 1-17-101. As the Eighth Circuit explained under similar Missouri laws, a judge's signature on the default judgment acts as a signature on the writ. *Coonts v. Potts,* 316 F.3d 745, 751 n. 4 (8th Cir. 2003). Once the clerk performs the ministerial act of issuing the writ, the law requires an "officer to whom a writ of execution is delivered [to] proceed immediately to levy the writ upon the real and personal property of the debtor." WYO. STAT. ANN. § 1-17-310. All property of a judgment debtor, with the exception of certain inapplicable exemptions, is subject execution. WYO. STAT. ANN. § 1-17-301.[6]

Generally, when a law enforcement officer is executing a court order, the officer is entitled to quasi-judicial immunity. *Moss v. Kopp,* 559 F.3d 1155 (10th Cir. 2009). "Just as judges acting in their judicial capacity are absolutely immune from liability under section 1983, officials charged with the duty of executing a facially valid court order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed in that order." *Moss,* 559 F.3d at 1163 (internal quotations and citations omitted).

---

[6] Plaintiffs have not challenged the constitutionality of Wyoming's statutes regarding collection of judgments. (See Doc. # 13 at ¶ 35 – acknowledging that all of the debtor's property was subject to execution). Therefore, Plaintiffs cannot contend that Wyoming's laws allowing the Clerk of Court to issue a writ of execution after the entry of judgment caused a constitutional injury. *See Coonts v. Potts,* 316 F.3d 745, 750-751 (8th Cir. 2003).

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 12

Therefore, the allegations of the Amended Complaint establish that the Defendants levied a validly issued Writ of Execution in accordance with Wyoming state law. Plaintiffs admit that no paperwork as to ownership was exchanged between the Defendants and Plaintiffs at the time of the seizure. (Doc. # 13 at ¶¶ 21, 24). Instead, Plaintiffs allege that their attorney and the Bank's attorney said the horses should not be levied against. (Doc. # 13 at ¶¶ 19-20). As a matter of law, the Defendants actions did not violate the constitution.

In *Johnson v. Outboard Marine Corp.,* 172 F.3d 531 (8th Cir. 1999), the Eighth Circuit held that a sheriff's deputy did not violate the plaintiff's constitutional rights by seizing a boat located at the corporate property which was not owned by the corporate judgment-debtor. In *Johnson,* the owner of the boat told the deputy that the corporation against whom judgment had been obtained did not own the boat in question and his lawyer told the deputies they could not levy on the boat. *Compare Johnson,* 172 F.3d at 533, 537-38 *with* Doc. # 13 at ¶¶ 19-21, 24 (Jim Wilcox unable to provide brand inspections to show who owned the horses and his lawyer said the writ was invalid as to the LLC). The Eighth Circuit concluded that the seizure of the boat pursuant to the writ of execution was not improper because:

> It cannot seriously be suggested that a deputy has an obligation to follow or even believe the legal advice given by a stranger under these facts. Failure to heed the threats or warnings of [plaintiff's] attorney did nothing to make the seizure unreasonable for purposes of the Fourth Amendment.

*Johnson,* 172 F.3d at 537.

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 13

Likewise, it cannot seriously be suggested that these Defendants can be held liable for levying a Writ of Execution issued after a district court judge entered a default judgment simply because the Plaintiffs' lawyer and a Bank lawyer said they should not execute the writ. (*Compare Johnson,* 172 F.3d at 537-38 *with* Doc. # 13 at ¶¶ 19-20). Since Defendants acted in a reasonable manner, the Defendants were simply executing a lawful court order. Hence, the Defendants are entitled to quasi-judicial immunity under *Moss* for the actual levying of the execution.

In the alternative, there is no clearly established law in the Tenth Circuit that would have required the Defendants to determine whether Wilcox Livestock had a meritorious defense to the default judgment taken against it. Therefore, to the extent the Plaintiffs allege that these Defendants made a mistake of law as to whether the default judgment against Wilcox Livestock was a valid judgment, these Defendants are entitled to qualified immunity. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (officer's mistaken, but reasonable belief as to the status of state law entitled him to qualified immunity). Clearly these Defendants' mistake of law, if any, was reasonable since a Wyoming attorney applied for the default judgment against Wilcox Livestock and a sitting Wyoming judge granted that application. (*See* Doc. #13-1 at 8-10).

**(B)     THE PLAINTIFFS WERE NOT DENIED DUE PROCESS.**

Plaintiffs allege they were denied Due Process with regard to the seizure. First, they claim that they were denied notice and an opportunity to be heard prior to the "seizure" (i.e. the levying of the writ of execution). (Doc. # 13 at ¶¶ 41-43). Plaintiffs

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 14

assertions are contrary to law and do not establish a Due Process claim under § 1983.

> **(1)** **PLAINTIFFS WERE NOT ENTITLED TO NOTICE OR A HEARING BEFORE LEVY OF THE WRIT OF EXECUTION.**

Due process dictates that "some kind of hearing is required at some time before a State *finally* deprives a person of his property interests. *Parratt v. Taylor,* 451 U.S. 527, 540 (1981) (emphasis added). However, the United States Supreme Court has held that even systems which allow pre-judgment attachment may be constitutional if sufficient safeguards are in place before final disposition of the attached property when both the debtor and the creditor have a property interest in the underlying property. *See Mitchell v. W.T. Grant Co.,* 416 U.S. 600 (1974). As the Tenth Circuit held in the particular context of a post-judgment writ of execution judgment-debtors are not entitled to notice or a hearing prior to a judgment-creditor obtaining or levying a writ of execution. *Huxall v. First State Bank,* 849 F.2d 242 (10th Cir. 1988). In rejecting the same sort of claim proposed by these Plaintiffs, the Tenth Circuit held:

> We construe [plaintiff's] argument to be that she was entitled to a hearing either prior to the issuance of the writ of execution or prior to sale. Appellant has cited no pertinent authority to support her contention, and we are unaware of a constitutional requirement of a hearing after liability on a debt has been adjudicated and the creditor is attempting to satisfy its judgment.

*Huxall,* 842 F.2d at 251.

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 15

Thus, Plaintiffs fail to state a claim upon which relief can be granted. There is no law that required an opportunity for notice and a hearing before the writ of execution was issued or these Defendants followed Wyoming law by levying the writ.

**(2)    PLAINTIFFS WERE NOT ENTITLED TO THE USE OF THEIR PROPERTY WHILE THE COURT SORTED OUT THE LEGAL ISSUES OF OWNERSHIP AND LIEN PRIORITY.**

Next, Plaintiffs claim that they were denied the use of their property for almost a year while various legal issues were resolved. (Doc. # 13 at ¶ 38). From there, Plaintiffs allege that they were arbitrarily deprived their property "to which Rhonda Robinson held no property interest, or an insufficient property interest to warrant seizure." (Doc. # 13 at ¶ 43). Again, Plaintiffs allegations are simply contrary to the law, and therefore fail to state a claim upon which relief may be granted.

In *Mitchell,* the Supreme Court upheld Louisiana's system whereby a vendor could obtain an ex parte, pre-judgment writ of sequestration. *Mitchell,* 416 U.S. at 601-603. In *Mitchell*, the Supreme Court concluded that when both parties have an interest in the underlying property, due process does not require that the debtor be guaranteed the use and possession of his property until all issues in the case were judicially resolved after full adversary proceedings. *Id.* at 607. Due Process does not require a hearing at the preliminary stage of a seizure "so long as the requisite hearing is held before the final administrative order becomes effective." *Id.* at 612.

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 16

In this case, like in *Mitchell*, Robinson had a property interest in horses owned by Jim Wilcox and Wilcox Livestock at the time the Writ of Execution was levied. Robinson had gone through a judicially supervised process. She had acquired a judgment. (*See* Doc. # 13 at 13-1 at 8-10). Under WYO. STAT. ANN. § 1-17-301, Robinson's judgment became a lien on the property of Jim Wilcox and Wilcox Livestock upon its entry on April 11, 2008. (*See* Doc. # 13-1 at 8-10). That judgment was never vacated as to Jim Wilcox and was not vacated as to Wilcox Livestock until June 8, 2009. (*See* Doc. # 13-3 at 1; Ex. T at ¶ 2).

Therefore, *Mitchell* applies. Just as in *Mitchell,* the Plaintiffs in this case had no right to the use and possession of their property once Robinson acquired a judgment lien over the property. The proper procedure under Wyoming law was exactly what happened, namely the Park County Sheriff's Department and these Defendants followed a lawful order and levied on the property; the Plaintiffs were permitted time to object; the Plaintiffs did object, and; the state district court ultimately ordered the relief to which Plaintiffs were entitled.

### (C) THE POST-LEVY PROCEEDINGS PROVIDED PLAINTIFFS WITH A MEANINGFUL AND ADEQUATE OPPORTUNITY TO BE HEARD.

The gravamen of Plaintiffs' Amended Complaint is that they were denied the use of their property for nearly a year. (Doc. # 13 at ¶ 38). Plaintiffs allege that the fact that the horses were boarded at the judgment-creditor's farm in South Carolina (free of

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 17

charge) rather than at a local stable caused the post-deprivation to be un-meaningful. (Doc. # 13 at ¶¶ 36, 44-45, 47). Therefore, the question becomes whether the Plaintiffs were provided adequate post-deprivation remedies under state law. This requires a meaningful opportunity to be heard at a meaningful time. The public records, some of which Plaintiffs rely upon and some of which are not attached to the Amended Complaint but may be considered by the Court, establish that not only were the post-deprivation procedures timely, they provided meaningful relief.

### (1) TIMELY POST-DEPRIVATION HEARING

The hearing conducted by the state district court was timely. Plaintiffs filed their objections on July 25, 2008. The hearing was conducted on or before July 29, 2008, and the matter was stayed to maintain the *status quo*. (*See* Ex. F). The parties were given time to brief the issues before the state district court and hearing was scheduled just two weeks later for August 14, 2008. (Ex. G). Plaintiffs' property was not finally disposed of prior to the August 14, 2008, hearing scheduled by the state district court. *See Mitchell,* 416 U.S. at 612. The court stayed the sale. (*See* Ex. F).

The substantial delay in this matter was occasioned by Plaintiffs Jim and Kelly Wilcox and Wilcox Livestock filing for bankruptcy on August 13, 2008. At that point, Plaintiffs caused delay of all the proceedings regarding return of the horses (which may or may not have been subject to levy). Plaintiffs own submissions establish that the paperwork to file bankruptcy had been completed prior to the execution on July 16, 2008. (*Compare* Doc. # 13-1 at 2 (all bankruptcy paperwork had been completed by June 27,

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 18

2008) *with* Doc. # 13 at ¶ 38).

Additionally, when Robinson sought to return the issue to the state district court, Plaintiffs objected. (Ex. L). Likewise, Plaintiffs withdrew their contempt motion in the Bankruptcy Court, again thwarting the process that was being provided. Thus, the delay alluded to in the Amended Complaint was, in large part, caused by Plaintiffs' legal maneuvering (namely filing for bankruptcy on the day before the state district court was going to provide a meaningful opportunity to be heard). (*Compare* Doc. # 13-1 at 2 (bankruptcy paperwork completed on June 26, 2008 (before the levy on the writ of execution) *with* Ex. H (Bankruptcy filed on August 13, 2008, the day before the scheduled court hearing)).

### (2) THE PROCESS PROVIDED IN STATE COURT WAS MEANINGFUL AS TO THE CHILDREN.

Once Plaintiffs allowed their bankruptcy to be dismissed, they received another hearing where they obtained the relief they requested and were entitled to receive. (*Compare* Ex. E at 3 (¶¶ a, c, d) *with* Ex. T at ¶¶ 2, 7, 8). This apparently included the return of the Children's horse(s) Jim Wilcox identified in his objections to levy. (Doc. # 13-3 at 1 (¶ 7); Ex. T at ¶ 8). Apparently that happened because "Skeeter," the horse identified as belonging to Jessie and Emilie Wilcox was not sold at the sheriff's sale. (*Compare* Exs. B & C (listing the horses sold at the sheriff's sale) *with* Ex. E at 13 (describing the horse owned by Jessie or Emilie Wilcox) *and* Doc. # 13 at ¶ 38 (only alleging that the Plaintiffs were denied the use of their horse while the state court

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 19

proceedings were sorted out)). The only thing that apparently did not happen was the return of "Neon's Cappuccino."

Thus, any claims raised by the Children are not cognizable. They were provided timely notice before their property was finally disposed of and apparently received that property back. *See Mitchell,* 416 U.S. at 612. Therefore, the Children have failed to state a plausible claim.

### (3) THE PROCESS PROVIDED IN STATE COURT WAS MEANINGFUL AS TO WILCOX LIVESTOCK AND KELLY WILCOX.[7]

With regard to Plaintiff Wilcox Livestock claims, Wilcox Livestock participated in the state court proceedings and was provided an opportunity to be heard before "Neon's Cappuccino" was ever to be sold at sheriff's sale. Plaintiff Wilcox Livestock never put forth any evidence as to who owns "Neon's Cappuccino" in the state court proceedings nor asked for the "Neon's Cappuccino" to be returned. (*See* Ex. E). Wilcox Livestock admits that "Neon's Cappuccino" was not sold at sheriff's sale. (Doc. # 13 at ¶ 34).

In *Huxall,* the Tenth Circuit concluded that a § 1983 plaintiff's failure to utilize an adequate state law process to correct a problematic execution defeats a § 1983 claim. In that case, the plaintiff's failure to avail herself of a state judicial remedy meant she did not state a § 1983 claim. *Huxall,* 842 F.3d at 251. In *Huxall,* the plaintiff simply refused

---

[7] This same analysis applies to Kelly Wilcox's claim. No horse allegedly belonging to Kelly Wilcox was identified to the state district court. (Compare Doc. # 13-2 at 16 with Ex. E).

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 20

to participate in the state court proceedings after her property was levied upon pursuant to a writ of execution.  *Id.* at 250.

In this case, Plaintiffs allegations show that the opportunity to object to the execution was meaningful.  In reviewing the sheriff's sale documents, it does not appear that "Majestic Sky," "Sundance," "Showgun," or "Jazz" were sold at the sheriff's sale.  (*Compare* Exs. B & C (listing the horses sold at the sheriff's sale) *with* Ex. E at 12, 14-16 (describing the horse owned by Wilcox Livestock)).    Instead, those horses were apparently returned in accordance with the state district court's order since Plaintiffs only allege they were denied the use of horses, except for "Neon's Cappuccino."  (*See* Doc. # 13 at ¶ 38).

With regard to the allegation that "Neon's Cappuccino" has not been returned, *Huxall* forecloses such a claim.  Plaintiff Wilcox Livestock simply never identified "Neon's Cappuccino" as a horse owned by Wilcox Livestock.  Despite Jim Wilcox swearing he had personal knowledge of the horses that were taken and noted which horses were taken (Doc. # 13-2 at 1 (¶¶ 4 & 6); Ex. E at 10 (¶¶ 4 & 6)), there is no mention of "Neon's Cappuccino" being a horse that was wrongfully levied pursuant to the Writ of Execution.  (*See* Ex. E at 12-16).  As in *Huxall,* Wilcox Livestock's failure to identify "Neon's Cappuccino" as a horse wrongfully levied against forecloses a § 1983 claim.

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 21

Since Jim Wilcox never put forth any allegation that "Neon's Cappuccino" was owned by "Wilcox Livestock" (Doc. # 13-3 at 1 (¶ 4)) or owned "by anyone other than Jim Wilcox." (Doc. # 13-3 at 1 (¶ 8)), that horse was not specifically described in the state district court's June 8, 2008, order. Therefore, it remains unclear to this day whether "Neon's Cappuccino" should have been sent back to Park County for sale at a sheriff's sale or should have simply been returned to its owner. Arguably, that issue can still be resolved by the state district court through a contempt motion against Robinson. Regardless, as in *Huxall,* it was Plaintiffs' failure to utilize an otherwise adequate state judicial remedy that has caused them to be without "Neon's Cappuccino" since the state district court entered its order on June 8, 2009. (*See* Ex. T).

Therefore, Plaintiff Wilcox Livestock has failed to state a plausible claim that it was denied due process. Instead, like the plaintiff in *Huxall,* Wilcox Livestock simply failed to properly use the adequate process that was provided with regard to "Neon's Cappuccino," a mistake which Wilcox Livestock may still be able to remedy in state court, not through a § 1983 action. *See Huxall,* 842 F.2d at 251.

### (4) WHETHER THE HORSES WERE BOARDED IN PARK COUNTY OR IN SOUTH CAROLINA IS A RED HERRING.

Finally, Plaintiffs allege that the fact that the horses were boarded at the judgment-creditor's property in South Carolina somehow caused a due process violation. (*See* Doc. # 13 at ¶ 36). This is a red herring.

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 22

As explained above, the delay in getting the issues of ownership and lien priority sorted out in the state-court proceedings was due to Plaintiffs filing bankruptcy on the eve of the very hearing scheduled to resolve those issues. Plaintiffs, through their own unilateral act, caused the delay in getting their horses returned to them. It is simply not plausible that the horse being boarded free of charge in South Carolina caused any delay in the ultimate proper resolution of the ownership issues when there was a bankruptcy pending and Plaintiffs seem to agree that all the horses objected to during the state-court proceedings were, in fact returned. Therefore, Plaintiffs' conclusory argument contained in Paragraph 36 of their Amended Complaint does not state a plausible cause of action. *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

### (D) PLAINTIFFS FAIL TO STATE A CLAIM OF CONPSIRACY UNDER § 1983.

Count II of Plaintiffs Amended Complaint must be dismissed as a matter of law. To establish a § 1983 conspiracy, the plaintiff "must prove both the existence of a conspiracy and the deprivation of a constitutional right." *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995)(*citing Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990)). As explained above, all of the Plaintiffs fail to state a Due Process claim. Therefore, their conspiracy claim in Count II must also be dismissed.

*Wilcox, et al v. Magill, et al.*, Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 23

**(E)     PLAINTIFFS STATE LAW CLAIMS SHOULD BE DISMISSED**

Federal district courts have supplemental jurisdiction over state law claims that are part of the "same case or controversy" as federal claims. 28 U.S.C. § 1367(a). However, "when a district court dismisses the federal claims, leaving only supplemented state claims, the most common response has been to dismiss the state claim or claims without prejudice." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (quotation marks, alterations, and citation omitted). If the parties have not shown they have spent a great deal of time on the state law claims, the "district court should normally dismiss supplemental state law claims after all federal claims are dismissed ... before trial." *Botefuhr,* 309 F.3d at 1273.  Courts generally should not retain supplemental jurisdiction over state-law claims when the federal claims have been dismissed because " '[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.' " *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (*quoting Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990)).

In this case, Plaintiffs have spent no significant time on their state-law claims. This motion to dismiss is being filed prior to Defendants even filing an answer. Therefore, notions of comity and federalism require that this Court dismiss Counts III and V and allow Plaintiffs to file such claims, if they choose, in state district court, not Federal district court.  *See Villalpando ex rel. Villalpando v. Denver Health and Hosp. Authority,* 65 Fed.Appx. 683, 688-89 (10th Cir. Apr. 14, 2003) (reversing district court's decision not to dismiss state law claims).

*Wilcox, et al v. Magill, et al*., Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 24

## IV.  CONCLUSION

As the documents attached to Plaintiffs' Amended Complaint and the documents contained in the underlying case demonstrate, this was not a run-of-the-mill execution followed by a sheriff's sale.  However, the Plaintiffs have not plead that their Due Process rights were violated.  They were provided multiple, timely hearings which granted them the relief they requested to which they were entitled.  Absent some allegation that Wyoming's statutes for executing on a judgment are unconstitutional, Plaintiffs simply fail to state a plausible claim upon which relief may be granted.  Therefore, Plaintiffs' Amended Complaint must be dismissed.

**DATED** this 29th day of November, 2010.

/s/ Thomas W. Rumpke
Thomas W. Rumpke
Senior Assistant Attorney General

## CERTIFICATE OF SERVICE

I do hereby certify that I electronically filed the foregoing on this 29th day of November, 2010, and served the following individuals:

Philip E. Abromats, P.C.
P.O. Box 827
Greybull, WY 82426

Anna M. Reeves Olson
Park Street Law Offices
242 South Park Street
Casper, WY 82601

William L. Simpson
Burg, Simpson, Eldredge, Hersh & Jardine, PC
P.O. Box 490
Cody, WY 82414-0490

/s/ MaryBeth Jones
MaryBeth Jones
Office of the Attorney General

*Wilcox, et al v. Magill, et al.*, Civil Action No. 10-CV-210-J
Memorandum of Law in Support of Motion to Dismiss
Page 25